645 So.2d 1240 (1994)
TIDELANDS LIMITED I, Tidelands Limited II, and Tidelands Offshore Drilling, Inc. as Successor to Temple Drilling Company
v.
The LOUISIANA INSURANCE GUARANTY ASSOCIATION.
No. 94 CA 0128.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
Writ Denied February 17, 1995.
D.C. Panagiotis, Lafayette, for plaintiffs-appellees.
Thomas E. Balhoff, Baton Rouge, for defendant-appellant.
*1241 Before LOTTINGER, C.J., and CARTER, and PITCHER, JJ.
LOTTINGER, Chief Judge.
Plaintiff seeks to recover from Louisiana Insurance Guaranty Association (LIGA) amounts it paid in settlements and judgments after its insurer became insolvent. The main issue arising in this case is whether the 1989 amendments to the LIGA statute, which define "ocean marine insurance," should be applied retroactively to a claim which arose prior to the amendments.

FACTS
Ideal Mutual Insurance Company (Ideal) issued to plaintiff several Standard Workers' Compensation and Employers' Liability policies, which were in force from 1981 through 1984. Ideal was declared insolvent on February 7, 1985. Various claims had arisen during the years of coverage, which were pending at the time of Ideal's insolvency. Plaintiff initially filed suit in federal court to recover money it paid in connection with the pending claims. After the federal suit was dismissed for lack of subject matter jurisdiction, this claim was filed. In granting plaintiff's motion for summary judgment, the trial court ruled that the 1989 amendments to LIGA were substantive in nature and therefore were not retroactive. The court then concluded that it was bound by the supreme court's pre-amendment definition of "ocean marine insurance." Under this definition, plaintiff's claim was not excluded from LIGA's coverage as "ocean marine insurance." Accordingly, the court awarded plaintiff $322,772.10 and denied LIGA's exceptions of no right of action, no cause of action and prescription. LIGA appeals the grant of plaintiff's motion for summary judgment and the denial of its exceptions and raises the following arguments:
1) The 1989 amendments are interpretive and should be applied retroactively to prohibit plaintiff's claim.
2) This is not a "covered claim" under LIGA because neither the claimant nor the insured are Louisiana residents.
3) As a Texas resident, plaintiff is required to seek recovery from the Texas Insurance Guaranty Association.
4) LIGA is entitled to the deductibles contained in the original policies.
5) Plaintiff's claim has prescribed.

LAW AND JURISPRUDENCE
Although "ocean marine insurance" has always been excluded from LIGA coverage under La. R.S. 22:1377, until 1989, the term was undefined. In Deshotels v. SHRM Catering Services, Inc., 538 So.2d 988 (La.1989), the Louisiana Supreme Court promulgated a definition of "ocean marine insurance" in response to a certified question by the United States Fifth Circuit Court of Appeals.[1] The supreme court interpreted La. R.S. 22:1377 as excluding from LIGA's coverage "different kinds of insurance policies, rather than different risks." Id. at 993. Utilizing this interpretation, the court concluded that "the exclusion for ocean marine insurance does not apply to employers' liability policies which incidently cover risks associated with maritime activities." Id. In essence, the court held that the "name" or "label" on the policy was controlling in determining coverage, not the nature or character of the claim.
In the legislative session following the supreme court's opinion in Deshotels, the legislature overruled the supreme court's definition of "ocean marine insurance." By Act 618 of 1989, the legislature added paragraph B to La. R.S. 22:1377, which provided:
Scope; policy coverage determination
A. This Part shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance.
B. The kind and coverage of insurance afforded by any policy shall be determined solely by the coverage specified and established in the provisions of that policy regardless *1242 of any name, label, or marketing designation for the policy.
By Act 688 of 1989, the legislature also amended La. R.S. 22:1379 to provide a definition for the term "ocean marine insurance." Rather than creating a new definition, the legislature merely inserted into the LIGA statute, the existing definition of "marine insurance" contained in the general provisions of Title 22. As amended, La. R.S. 22:1379(9) provided:
Definitions:
As used in this Part:
(9) "Ocean marine insurance" includes marine insurance as defined in R.S. 22:6(13), except for inland marine, as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity. Such perils and risks insured against include without limitation loss, damage or expense or legal liability of the insured for loss, damage, or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss or damage to the property of the insured or another person.
Through these amendments, the legislature made it clear that the name or label on the insurance policy was not controlling, rather it was the type of claim involved which determined if the insurance was "ocean marine insurance."

RETROACTIVITY
The question presented here is whether plaintiff's claim, which arose prior to the amendments, should be governed by the 1989 amendments. Under the Deshotels definition, plaintiff's claim is not excluded from LIGA coverage as "ocean marine insurance." However, if plaintiff's claim is governed by the 1989 amendments, then the claim is clearly barred under the legislature's definition of "ocean marine insurance." Plaintiff contends that the amendments are substantive and thus cannot be applied retroactively so as to destroy vested rights. LIGA contends that the amendments were interpretive and apply retroactively. Unless there is a legislative expression to the contrary, substantive laws apply prospectively only, and procedural and interpretive laws apply both prospectively and retroactively. La.Civ.Code art. 6. Substantive laws are those which establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the original statute had from the time of its enactment. St. Paul Fire & Marine Insurance Company v. E.R. Smith, Jr., 609 So.2d 809, 817 (La.1992). It is the original statute, not the interpretive one, that establishes the rights and duties. Id. Thus, the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. Id.; Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576, 591 (La.1974).
Addressing the subject of interpretive legislation, the Louisiana Supreme Court, in St. Paul, utilized five factors in determining whether a law was interpretive. Applying these factors, we conclude that the 1989 amendments are interpretive.
First, the amendments were a "prompt" rather than a delayed legislative response to the Deshotels decision. The legislature acted immediately by amending the statutes in the next legislative session. The fact that the amendment came immediately after the supreme court's decision indicates the legislature's intent to clarify the meaning of the term "ocean marine insurance," a phrase which had been part of the LIGA statute since its inception in 1970.[2]
*1243 Second, the amendments overruled a single supreme court decision rather than a long line of established jurisprudence. The legislature acted quickly to clarify the definition of "ocean marine insurance" before the Deshotels definition became entrenched in the jurisprudence.
Third, the parties could not have relied on the Deshotels' definition in making their claims. Plaintiff initially filed suit in federal court on April 15, 1987. Deshotels was not decided until January 30, 1989. By the time plaintiff filed this claim in state court in 1991, the legislature had overruled Deshotels by providing a specific definition for "ocean marine insurance." Thus, unlike the parties in St. Paul, the parties in the present case did not rely on the overruled jurisprudence in making their claims.
Fourth, the acts which amended La. R.S. 22:1377 and 22:1379 were not part of an extensive revision of the LIGA statute. The amendments merely clarified the scope of policy coverage, amended the definition of "member insurer," and added definitions for "insurance policy" and "ocean marine insurance."
Finally, there is no evidence that the legislature intended the amendments to have prospective effect only. Absent legislative expression to the contrary, interpretive laws apply both prospectively and retroactively. La.Civ.Code art. 6.
Considering these factors, we conclude that the amendments are interpretive only and thus should have been applied retroactively to exclude plaintiff's claim.[3] Additionally, we note that the fourth circuit reached the same conclusion in H & B Construction Co. of La., Inc. v. Louisiana Insurance Guaranty Association, 580 So.2d 931 (La. App. 4th Cir.), writ denied, 587 So.2d 695 (La.1991). In addressing the issue of the retroactivity of the 1989 "ocean marine insurance" amendments, the fourth circuit concluded that the action taken by the Louisiana legislature in 1989, to amend the LIGA statute, coupled with the jurisprudential history of the term "ocean marine insurance," compelled the conclusion that the legislature intended to retroactively alter the result reached by the Louisiana Supreme Court in Deshotels. In concluding that the amendments were retroactive, the fourth circuit stated:
The jurisprudential history and response of the legislature support the inference that these amendments were intended to interpret and clarify the law. La. C.C. art. 6, which addresses the retroactive effect of laws, clearly provides that interpretive laws are to be given retroactive effect absent legislative expression of contrary intent. We believe that this was the intent here, and hold that the provisions of the LIGA statutes, as amended by the sections specified above, are retroactive in effect and should have been applied by the trial court in this case.
Id. at 933.
Plaintiff asserts that retroactive application of the amendments is impermissible as this would deprive it of the vested right to recover against LIGA. Such an "argument reflects a misunderstanding concerning the exception relating to interpretive laws ...". Laubie v. Sonesta International Hotel Corporation, *1244 752 F.2d 165, 168 (5th Cir.1985). Interpretive laws cannot divest vested rights because it is the existing law, not the interpretive law, which established the rights and duties of the parties. St. Paul Fire & Marine Insurance Company, 609 So.2d at 817. Interpretive laws merely clarify those pre-existing rights and duties. Id.
"Ocean marine insurance" has been excluded from LIGA's coverage since LIGA's inception in 1970. According to the foregoing discussion, the exclusion has always applied to the type of coverage presently at issue. Retroactive application of the 1989 amendments will not disturb plaintiff's vested right, as plaintiff never had a right to recover from LIGA.
Having concluded that the amendments are interpretive and apply retroactively so as to exclude plaintiff's claim, we need not address the remaining assignments of error.

CONCLUSION
For the foregoing reasons, the trial court's judgment granting plaintiff's motion for summary judgment is reversed. LIGA's peremptory exception raising the objection of no cause of action is granted and plaintiff's suit is dismissed. Costs of this appeal are assessed against plaintiff.
REVERSED AND RENDERED.
NOTES
[1] The question was certified in Deshotels v. SHRM Catering Services, Inc., 845 F.2d 582, 585 (5th Cir.1988).
[2] The Louisiana Supreme Court addressed the retroactivity issue in Segura v. Frank, 93-1271 (La. 1/14/94); 630 So.2d 714. In concluding that the amendment in question was retroactive, the court found it significant that the amendment at issue was a delayed legislative response (over 10 years), rather than a "prompt" legislative response to the supreme court's previous interpretation of the statute. Unlike the sequence of events present in Segura, the amendments at issue here were not delayed, but instead were as "prompt" a legislative response as could possibly have occurred.
[3] In brief, plaintiff cites International Matex Tank Terminals v. LIGA, 633 So.2d 712 (La.App. 1st Cir.1993), and submits that the reasoning therein applies in the present case. In Matex, this Court ruled that the portion of Act 688 of 1989, which added a definition for "insurance policy" to La. R.S. 22:1379, was substantive in nature and applied prospectively only. In reaching that conclusion, we noted that at the time of the amendment, "there was no definition or even mention, of the term `cut-through' endorsement in the Guaranty Association Law." Additionally, we emphasized that the jurisprudence consistently held that such endorsements constituted direct insurance as a matter of law.

The present case is distinguishable from Matex. First, the term "ocean marine insurance" has always been included in the LIGA statute. Second, although the term was not specifically defined in the LIGA statute, "marine insurance," a synonymous term, was defined in the general provisions of the insurance code. Finally, the jurisprudence did not consistently define "ocean marine insurance." Thus, the Matex reasoning is inapplicable in this case.